Jay M. Spillane (CA Bar No. 126364)
jspillane@spillaneplc.com
SPILLANE TRIAL GROUP PLC
468 N. Camden Drive, Second Floor
Beverly Hills, CA 90210
(424) 217-5980
(888) 590-1683 (fax)

Alan L. Braunstein, Esq. (Pro Hac Vice Pending)
abraunstein@riemerlaw.com
RIEMER & BRAUNSTEIN LLP
100 Cambridge Street, 22nd Floor
Boston, MA 02114
Tel: (617) 880-3516
Fax: (617) 692-3516

RIEMER & BRAUNSTEIN LLP
660 Newport Center Drive
Suite 1400
Newport Beach, CA 92660

Attorneys for Plan B Management, Inc.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In Re:<br><br>DIVERSIFIED PANELS SYSTEMS, INC.,<br><br>Debtor. | Case No.: 9:23-bk-11112-RC<br><br>Chapter 11<br><br>**MOTION OF PLAN B MANAGEMENT, INC. TO DISMISS CHAPTER 11 CASE**<br><br>Date: TBD<br>Time: 2:00 p.m.<br>Crtrm: 201<br>    1415 State Street<br>    Santa Barbara, CA 93101 |

Plan B Management, Inc. ("**Plan B**"), a pre-petition judgment claim creditor, hereby moves to dismiss the Chapter 11 case of Diversified Panels Systems, Inc. (the "**Debtor**"). The Debtor's connections to the cannabis industry constitute continuing violations of federal law, namely the federal Controlled Substances Act, 21 U.S.C. §§ 801-904 ("**CSA**") which, among other things, makes it a federal offense to "manufacture" or "distribute" any "equipment, chemical, product or material which may be used to manufacture a controlled substance . . . knowing, intending, or having reasonable cause to believe that it will be used to manufacture a controlled substance…. 21 U.S.C. § 843(a)(7).

DPS does not grow cannabis, but 90% of its customers do, and therefore 90% of DPS's revenues derive from sale of cannabis. Bankruptcy courts may dismiss cases for "indirect" involvement in cannabis, including where a debtor's product or equipment is used in cannabis related activities with knowledge of the debtor and the debtor receives its revenue from cannabis related enterprises and/ or in violation of the CSA. All such grounds effectively restrict the bankruptcy court's ability to provide relief to the Debtor under the Bankruptcy Code.

## JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory bases for relief requested herein are §§ 105(a), and 1112 (b) of Title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule 2002 of the Federal Rules of Bankruptcy Procedure.

## RELEVANT BACKGROUND

The Debtor filed its voluntary petition under Chapter 11 of the United States Bankruptcy Code on November 22, 2023 (the "**Petition Date**").

On the Petition Date, the Debtor filed its Emergency Motion for Authority to Use Cash Collateral on an Interim And Final Basis [Doc. No. 4], as augmented and/or

supplemented on November 30, 2023 [Doc. No. 30], December 27, 2023 [Doc. No. 60], and January 8, 2024 [Doc. No. 65] (the "**Cash Collateral Motion**"). A continued hearing is scheduled on the Cash Collateral Motion for January 23, 2024.[1] Plan B filed its response and memorandum with respect to the Cash Collateral Motion on December 11, 2023 [Doc. No. 46] (the "**Plan B Cash Collateral Response**").

On the Petition Date, the Debtor also filed its bankruptcy schedules, and statement of financial affairs [Doc. No. 13] (the "**Schedules**"). According to the Debtor's Schedule D, the Debtor listed two secured creditors with all asset liens (approximately $1,186,857.00), plus one secured creditor with equipment loan ($517,324.00).[2] The Debtor's Schedule F reflects general unsecured claims in the amount of $24,410,666.43, incorrectly including Plan B's initial judgment amount (defined below), which should have been scheduled as a secured debt.[3]

On January 10, 2024, the Debtor filed its initial Chapter 11 status conference report [Doc. No. 71] (the "**Initial Report**") pursuant to which the Debtor intends to "liquidate, to market and sell the business, and to make payments to creditors using the funds received from the sale of the business." *See Initial Report* ¶ 2(d).

---

[1] The Cash Collateral Motion was initially granted in part on November 30, 2023 for use of cash collateral through December 14, 2023 [Doc. No. 29]. A second order granting in part the Cash Collateral Motion was entered on December 18, 2023 for use of cash collateral through January 10, 2024 [Doc. No. 53]. A third order granting in part the Cash Collateral Motion was entered on January 11, 2024 for use of cash collateral through January 23, 2024 [Doc. No. 79].

[2] According to the Cash Collateral Motion and Initial Report, the value for the equipment assets is $100,000.00.

[3] Plan B recorded pre-petition a J1 with the California Secretary of State and should have been scheduled as a secured creditor before any avoidance of the lien.

1   According to the Initial Report, the total value for the Debtor's primary assets
2 is $7,905,590.45[4] which include receivables value of $6,568,485.23.
3   On January 12, 2024, the Court issued an Order to Show Cause Why Chapter
4 11 Trustee Should Not Be Appointed Pursuant to 11 U.S.C. § 1104(a) [Doc. No. 80]
5 (the "**Trustee Show Cause Order**"). Under the Trustee Show Cause Order, potential
6 cause includes "fraud, dishonesty, incompetence, or gross mismanagement of the
7 affairs of the debtor by current management…"
8   On January 17, 2024, the Debtor filed its Memorandum of Points and
9 Authorities in response to the Trustee Show Cause Order [Doc. No. 93] (the "**Debtor**
10 **Response**") suggesting and seeking the approval of the appointment of a chief
11 restructuring officer ("**CRO**") to assist in the marketing of the Debtor or sale of the
12 business.
13   Also, on January 17, 2024, (i) Euclid Investments Funding II LLC filed a
14 response to the Trustee Show Cause Order [Doc. No. 92], requesting that the
15 appointment of an experienced CRO be considered instead of the appointment of a
16 Chapter 11 trustee; and (ii) Plan B filed a response to the Trustee Show Cause Order
17 [Doc. No. 94] ("**Plan B Show Cause Response**"), notifying its intention to file this
18 motion to dismiss the Chapter 11 case, and, in the alternative, supporting the
19 suggestion of a CRO appointment.
20   The Office of the United States Trustee (the "**U.S. Trustee**") filed, on January
21 17, 2023, a motion to continue the January 23, 2024 hearing on the Trustee Show
22 Cause Order [Doc. No. 95] (the "**UST Response**"), expressing the intention to file a
23 motion to dismiss the Chapter 11 case.

---

[4] This amount does not include disclosed insider loan receivable of $3,689,508.96.

- 3 -

Plan B Motion to Dismiss

### A. The Debtor's Business and Sources of Income

According to various pleadings filed by the Debtor in the bankruptcy case, (i) the Debtor manufactures panels for processing rooms and growing facilities for flowers and strawberries, and (ii) the Debtor's panels, refrigerators, and freezers for cold storage are utilized in the agricultural and food retail industries, including the cannabis growing industry. *See Initial Report* ¶ 2(a); *Adversary Proceeding Complaint* ¶7.

Seventy percent (75%) of the Debtor's historical gross sales is from cold storage work, and twenty five percent (25%) of the Debtor's historical gross sales is from panels built for use in cannabis growing facilities. *See Cash Collateral Motion*, ¶ 3; *Initial Report* ¶ 2(a); *Adversary Proceeding Complaint* ¶8. According to the Debtor, due to changes in state regulations, only ten percent (10%) of the Debtor's current gross sales are from cold storage work, while ninety percent (90%) are from panels built for use in the cannabis industry. *See Initial Report* ¶ 2(a); *Adversary Proceeding Complaint* ¶8.

### B. Claim of Plan B Management, Inc.

Before the Petition Date, Plan B filed an action against the Debtor with the Ventura County Superior Court (the "**State Court**"), Case No. 56-2019-00530377, arising from breach of a joint venture with DPS to market and sell cold storage panels to customers seeking to build indoor cannabis grow rooms. *See Plan B Cash Collateral Response*, page 1.

On August 22, 2023, after a jury verdict in favor of Plan B, the State Court entered Judgment in favor of Plan B and against the Debtor in the sum of $12,000,001, plus interest at the rate of 10% per annum.

On August 25, 2023, Plan B recorded its "Notice of Judgment Lien (JL 1)" with the California Secretary of State. *See Plan B Cash Collateral Response*, page 1.

The judgment amount was reduced on November 16, 2023, through post-trial motions, to $10,075,001.00. *See Plan B Cash Collateral Response*, page 1. On

1  December 18, 2023, Plan B filed its proof of claim (Claim 4-1) in the amount of
2  $10,386,911.99 (secured claim). Plan B's claim remains subject to accruing post-
3  judgment interest.
4        The Debtor filed on January 12, 2024, an adversary proceeding [Doc. No. 86]
5  (the "**Adversary Proceeding Complaint**") with respect to the Plan B's claim. DPS
6  avers, falsely, that Plan B is in the business of growing and selling cannabis, when
7  DPS's principals testified under penalty of perjury in the state trial that Plan B worked
8  with DPS to sell cold storage panels, not to grow cannabis. Even though Plan B is in
9  the same business as DPS, DPS nevertheless seeks to disallow Plan B's claim in
10 bankruptcy because Plan B is allegedly violating the Controlled Substances Act.

## MOTION TO DISMISS

12       Pursuant to section 1112(b) of the Bankruptcy Code:

> "[O]n request of a party in interest, and after notice and a hearing, the court **shall** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."

19 11 U.S.C. § 1112(b)(1) (emphasis added).
20       Although the Bankruptcy Code does not define "cause" as that term is used in
21 section 1112(b), subsection (b)(4) has a list of what constitutes cause which is
22 nonexclusive. In re Carrero, 2016 Bankr. Lexis 3215, *2 (Bankr. D.P.R. September 1,
23 2016); In re Green Jane, Inc., 2017 Bankr. LEXIS 1435, *15 (Bankr. C.D. Cal. May
24 16, 2017) (the factors set forth in §1112(b)(4) "are not exhaustive," and the court will
25 be able to consider other factors as they arise, and to use its equitable powers to reach
26 an appropriate result in individual cases).
27       The Court in In re Hacienda Co., LLC, 647 B.R. 748 (Bankr. C. D. Cal. 2023)
28 discussed several alternative reasons why violations of nonbankruptcy law might

establish cause for dismissal.  First, violations of nonbankruptcy law might warrant dismissal under general principles applicable to a bankruptcy court as a court of equity, pursuant to bankruptcy judges' oath of office to uphold the law, or on other theories.  Id. at 752.  Second, violations of nonbankruptcy law might constitute "gross mismanagement" of the estate, within the meaning of § 1112(b)(4)(B) because violations of nonbankruptcy law might expose the estate to financial losses and criminal sanctions, and violating the law might constitute "mismanagement" per se.  Id. at 751-752.

In addition, such violations of nonbankruptcy law might establish a lack of "good faith" sufficient to warrant dismissal.  Id. at 751. See also,  Burton v. Maney (In re Burton), 610 B.R. 633, 638 (B.A.P. 9th Cir. 2020) (a bankruptcy filing or a proposed plan of reorganization by a debtor who is involved in an illegal enterprise is not in good faith, even where the debtor does not have a subjective bad motive, is in legitimate need of bankruptcy relief, and there are no other indicia of an attempt to abuse the bankruptcy process); In re Olson, 2018 Bankr. LEXIS 480, *14 (B.A.P. 9th Cir. Feb. 5, 2018) (same).

### A. The Debtor's Business Operations Violate the Controlled Substances Act.

Section 843(a)(7) of the CSA provides as follows: [5]

"It shall be unlawful for any person knowingly or intentionally—

---

[5] The CSA generally prohibits, among other things, the manufacture, distribution, dispensing of, or possession with intent to manufacture, distribute, or dispense, a controlled substance. 21 U.S.C. § 841(a)(1).  This subsection may not be in question here as the debtor manufactures cold storage equipment or product, not cannabis. The CSA also expressly provides that any person who "conspires to commit any offense" under the CSA shall be subject to the same penalties as the principal.  In re Way to Grow, Inc. 597 B.R. 111, 116 (Bankr. D. Colo. 2015) (citing to 21 U.S.C. § 846).

> to **manufacture**, **distribute**, export, or import any three-neck round-bottom flask, tableting machine, encapsulating machine, or gelatin capsule, or any **equipment**, chemical, **product**, or **material** which **may be used to manufacture a controlled substance** or listed chemical, knowing, intending, or having reasonable cause to believe, that it will be **used to manufacture a controlled substance** or listed chemical in violation of this title or title III or, in the case of an exportation, in violation of this title or title III or of the laws of the country to which it is exported."

21 U.S.C. § 843(a)(7)(emphasis added).  See In re Way to Grow, Inc. 597 B.R. 111, 116 (Bankr. D. Colo. 2015) [section 843(a)(6) of the CSA refers to possession of drug manufacturing equipment while § 843(a)(7) refers to distribution of such equipment. The scienter required for conviction under either sub-section is the same].

The CSA also makes it unlawful for any person to offer or sell "drug paraphernalia," which is defined as **any equipment or product** "use[d] in manufacturing . . . producing, processing . . . or otherwise introducing . . . a controlled substance."[6] In re Mayer, 2022 Bankr. LEXIS 256, *7 (Bankr. D. Arizona, Jan. 31, 2022) (citing to 21 U.S.C. §§ 863(a)(1), 863(d)).

The Debtor, here, manufactures panels and other products utilized in the cannabis growing industry. In fact, as set forth above, the Debtor admitted that ninety

---

[6] 21 U.S.C. § 863(e) sets forth a nonexclusive list of factors that a court may consider when determining whether an item constitutes "drug paraphernalia," including: (1) instructions, advertisements, and descriptive materials accompanying the product; (2) expert testimony concerning the product's use; (3) how the product is displayed for sale; (4) the scope of the product's legitimate use in the community; and (5) the ratio of sales of the product to the total sales of the business enterprise." In re Mayer, 2022 Bankr. LEXIS 256, *7 (Bankr. D. Arizona, Jan. 31, 2022).

percent (90%) of the Debtor's current gross sales are from panels built for use in the cannabis industry.  There is no dispute that the Debtor has knowledge that its purchasers use the Debtor's panels and other products for cannabis production.  The Debtor is violating 21 U.S.C. § 843(a)(7).[7] In re Way to Grow, Inc. 610 B.R. 338 (Bankr. D. Colo. 2019) (the court affirmed the bankruptcy court's dismissal of the bankruptcy case of a debtor's business that sold gardening equipment and supplies to parties growing marijuana). Cf., In re Mayer, 2022 Bankr. LEXIS 256, at *8 [the debtor's corporation manufactures and sells organic extraction presses; the court decides that even if the court were to find that the machines do not constitute "drug paraphernalia," the company is also violating § 843(a)(7) of the CSA.  There is no dispute that the company had "knowledge" that customers use the machines to manufacture rosin.].

### B.     Sources of Income and Assets Are Derived From Such CSA Violations

It is true that courts in the Ninth Circuit have found that "the mere presence of marijuana near a bankruptcy case does not automatically prohibit a debtor from bankruptcy relief."  In re Mayer, 2022 Bankr. LEXIS 256, at *6. However, bankruptcy courts have the authority to dismiss a debtor's case in which cannabis-related business activity is present. Id. Cf., In re Burton, 610 B.R. at 639 (the 9th Circuit Bankruptcy Appellate Panel held that § 1307's flexible "cause" standard, "coupled with the abuse of discretion standard of review on appeal," gives bankruptcy courts the authority to dismiss a debtor's case in which cannabis-related business activity is present).

---

[7] Also, based on this definition of "drug paraphernalia" under section 863(d) of the CSA, the Debtor may be manufacturing and selling "drug paraphernalia" in violation of the CSA.

Therefore, bankruptcy courts have dismissed cases not only where debtors are directly engaged in violations of the CSA, but also for "indirect" involvement in cannabis. In re Way to Grow, Inc., 597 B.R. at 117 (bankruptcy courts have consistently dismissed cases where debtors engaged in ongoing CSA violations, or where a debtor's reorganization efforts depend on funds which can be considered proceeds of CSA violations).

Bankruptcy courts may dismiss cases, for example, where a debtor's equipment or product is used in cannabis related activities. In In re Way to Grow, Inc., 597 B.R. 111 (Bankr. D. Colo. 2018),[8] the debtors sold hydroponic gardening equipment. The debtors' customer base used the equipment for growing a variety of crops, including marijuana. Id. at 114-115. The bankruptcy court concluded that the debtors' business model and execution thereof fundamentally violated § 843(a)(7) of the CSA which continued post-petition. The bankruptcy court stated that it cannot enforce federal law in aid of the debtors because the debtors' ordinary course activities constitute a continuing federal crime. Id. at 131-132. The bankruptcy court found this is, inescapably, cause to dismiss the bankruptcy case under 11 U.S.C. § 1112(b). Id.

Having reached this conclusion, the bankruptcy court nevertheless considered whether any alternative to outright dismissal, or other post-petition changes to the debtors' business, could cure the ongoing violations of federal law in this case. The court found that the debtor's case could not survive if they were to sever all ties to their marijuana customers. The debtors' business activities constituting violations of the CSA are a major part of debtors' ordinary course of business. The court noted that whether marijuana-related customers account for 65% or 95% of debtors' revenue,

---

[8] The district court affirmed the judgment of the bankruptcy court. In re Way to Grow, Inc., 610 B.R. 338, 344-345 (D. Colo. 2019).

eliminating all such revenue would be devastating to the debtors, and it would be inconceivable for the debtor to still operate profitably. Id. at 132.

Here, as admitted by the Debtor, ninety percent (90%) of the Debtor's current gross sales are from panels built for use in the cannabis industry. The Debtor's reliance on such revenue would be critical for its ongoing operations. The Debtors' primary business is a violation of 21 U.S.C. § 843(a)(7). Therefore, there is cause to dismiss this bankruptcy case under 11 U.S.C. § 1112(b).

Other courts have considered dismissal of bankruptcy cases in which the debtor derived at least some of its revenue or proceeds from a cannabis related enterprise or in violation of the CSA, including the following:

(i)  In re Mayer, 2022 Bankr. LEXIS 256 (Bankr. D. Arizona, Jan. 31, 2022): The Chapter 13 debtor was the President of Rosinbomb, a Nevada corporation, which manufactured and sold organic extraction presses utilizing a combination of heat and pressure to generate organic concentrates. Rosinbomb's machines are primarily used to extract and process marijuana rosin. The debtor's sole source of income was a $7,500 monthly salary from Rosinbomb. The debtor's Schedule A/B listed 11 million shares of restricted common stock in the company. The debtor, in his individual capacity, filed for bankruptcy and is personally a step removed from the illegal marijuana activity. Yet, the court found that the debtor "is ensnared between his involvement in a business that is legal under the laws of Arizona but illegal under federal law. Id. at 14. Unless and until federal law and Arizona law align to permit Rosinbomb's machines to legally generate marijuana rosin, the debtor may not seek bankruptcy protection." Id. The court reasoned that the debtor's only reliable assets which could support a feasible chapter 13 plan are derived from ongoing CSA violations. These illegal proceeds cannot support the debtor's chapter 13 plan. Therefore, the bankruptcy court dismissed the debtor's chapter 13 case for "cause" pursuant to §§ 1307(c) and 105(a).

1     (ii)    Burton v. Maney (In re Burton), 610 B.R. 633, 637 (B.A.P. 9th Cir. 2020): The debtors owned the majority interest in Agricann, LLC, an entity that was engaged in cultivating and selling marijuana. Agricann was a plaintiff in at least two state court lawsuits in which it sought recovery of damages for breach of contracts related to growing and selling marijuana. The bankruptcy court dismissed the debtors' chapter 13 case pursuant to §§ 105(a) and 1307(c), finding that their ownership interest in Agricann constituted "cause" for dismissal because the continuation of the case would likely require the trustee or the court to become involved in administering the proceeds of the Agricann litigation, which the court implicitly found would be tainted as proceeds of an illegal business. The 9th Circuit BAP found that the bankruptcy court did not err in this finding, nor did it abuse its discretion in dismissing the case on those grounds. The 9th Circuit BAP also found that whether Agricann is currently actively engaged in growing or selling marijuana is irrelevant, given that Agricann is a plaintiff in litigation seeking to recover damages consisting at least in part of profits lost as a result of breaches of contracts related to the growing and selling of marijuana. Therefore, any proceeds received from the litigation would represent profits from a business that is illegal under federal law. Id. 639.

    (iii)    In In re Medpoint Mgmt., LLC, 528 B.R. 178 (Bankr. D. Ariz. 2015), *vacated in part on other ground*, 2016 Bankr. LEXIS 2197 (B.A.P. 9th Cir. June 3, 2016): An involuntary Chapter 7 case was filed against an entity that provided management services to a medical marijuana business. The court dismissed the case because its continuation would require a Chapter 7 bankruptcy trustee to violate federal law and subject the bankruptcy estate to possible forfeiture of the alleged debtor's assets. "[t]he Court will not enter an order for relief which would then result in the appointed chapter 7 trustee necessarily violating federal law (the CSA) in carrying out his or her duties under the [Bankruptcy] Code". Id. at 186.

(iv)    In re Rent-Rite Super Kegs West Ltd., 484 B.R. 799 (Bankr. D. Colo. 2012): The Chapter 11 debtor derived 25% of its revenue from leasing warehouse space to marijuana businesses. The court found that this activity was prohibited under the CSA, and that the debtor was in continuing violation of federal law during its bankruptcy case. The bankruptcy court concluded: "[E]ven if the Debtor is never charged or prosecuted under the CSA, it is conducting operations in the normal course of its business that violate federal criminal law. Unless and until Congress changes that law . . . a federal court cannot be asked to enforce the protections of the Bankruptcy Code in aid of a Debtor whose activities constitute a continuing federal crime." Id. at 805.

The Debtor's revenue and receivables are derived from CSA violations, as discussed above. Any Chapter 11 plan to be proposed by the Debtor, reorganization or liquidation would depend on such assets.

### C.    Appointment of a Trustee is Not in the Best Interests of Creditors

As mentioned above, section 1112(b)(1) of the Bankruptcy Code provides that dismissal is mandatory **unless** "the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1) (emphasis added).

Apparently, all parties in interest in this case, including the Debtor, agree that a Chapter 11 trustee should not be appointed or is not in the best interests of creditors and the estate. See Debtor Response. See also Response to Order to Show Cause filed by Euclid Investments Funding II LLC [Doc. No. 92].

As discussed in the Plan B Show Cause Response, the appointment of a Chapter 11 trustee may lead to a fire sale of the Debtor's assets as a trustee may not have the experience and motivation to ensure the ongoing operation of the company. Converting the case to Chapter 7 would cause the going concern value of the business to evaporate and also the value of the business and the assets necessary for operation to deteriorate.

1  **D.    The "Unusual Circumstances" Exception Does Not Apply**

2  Section 1112(b)(2) of the Bankruptcy Code provides that even when there is "cause" to dismiss or convert a case, the bankruptcy court must not to do so under the "unusual circumstances" test described in that subsection.  The elements of this test are as follows: (1) unusual circumstances establishing that dismissing the case is not in the best interests of creditors and the estate, and (2) the debtor or any other party in interest establishes (A) reasonable likelihood that a plan will be timely confirmed, and (B) the grounds for dismissing the case include an act or omission of the debtor for which there exists a reasonable justification, and that will be cured.  <u>See</u> 11 U.S.C. § 1112(b)(2).

Such unusual circumstances are not applicable or satisfied here. Courts have held that "a party cannot seek equitable bankruptcy relief from a federal court while in continuing violation of federal law."  <u>In re Way to Grow, Inc</u>., 597 B.R. at 120.  <u>See also</u>, <u>In re Olson</u>, 2018 Bankr. LEXIS 480 at  *13-14  ("to the extent estate assets are used for or generated by the operation of a federally prohibited marijuana business, a trustee or debtor in possession may not administer those assets without violating federal law."); <u>In re Burton</u>, 610 B.R. at  638  (if the continuation of a bankruptcy case would require the court, trustee, or debtor in possession to administer assets that are illegal under the CSA or that constitute proceeds of activity criminalized by the CSA, such case must be dismissed); <u>In re Rent-Rite Super Kegs West Ltd</u>., 484 B.R. at 805 (a federal court cannot be asked to enforce the protections of the Bankruptcy Code in aid of a debtor whose activities constitute a continuing federal crime).

**E.    Debtor's Position - Cannabis-adjacent Businesses**

In the Debtor Response, the Debtor maintains that "[b]usinesses that do not sell or cultivate cannabis are legally regarded as cannabis-adjacent businesses" which are eligible for relief under Chapter 11. *See Debtor Response*, ¶ 12.

The Debtor cited to <u>In re Hacienda Co., LLC</u>, 647 B.R. 748 (Bankr. C. D. Cal. 2023) for the proposition that:

- 13 -

Plan B Motion to Dismiss

> "[The <u>Hacienda</u> court] denied a motion to dismiss a Chapter 11 case for a company which had participated in manufacturing and packaging of cannabis products pre-petition, but which had not processed or sold cannabis post-petition. The pre-petition violation of non-bankruptcy law was not cause for dismissal as the Debtor in Possession would not need to violate the law as part of its reorganization. DPS will not need to cultivate or sell cannabis as part of its going concern liquidation."

*See Debtor Response*, ¶ 12.

While <u>Hacienda</u> provides a useful review of recent authorities, it is off point, in that the debtor had ceased sales to cannabis customers, whereas here, the Debtor's business operations and assets will continue to be in violation of the CSA post-petition. As stated in the UST Response, 90% of the Debtor's business is based on assets that constitute proceeds of activities criminalized by CSA. Permitting the Debtor to proceed in this Chapter 11 case would allow the Debtor to use this Court as a shield protecting its illegal contract and its assets. *See UST Response*, page 8.

The Debtor also cited to <u>Garvin v. Cook Invs. NW, SPNWY, LLC (In re Cook Invs. NW)</u>, 922 F.3d 1031 (9th Cir. 2019) for the proposition that:

> "[T]he Ninth Circuit affirmed confirmation of a Chapter 11 plan over objection of the United States Trustee of a Debtor whose land had been leased to a marijuana grower. Dismissal was not warranted even though the Debtor received rent from growers of cannabis. Like the Debtor in *Cook*, DPS receives income from customers who grow cannabis but under the same rationale, DPS should be allowed to reorganize in Chapter 11." *See Debtor Response*, ¶ 15

What is not reflected in the Debtor Response is that in <u>In re Cook</u>, the debtor's amended plan was confirmed because the debtor rejected the lease in question that violated the CSA, and the debtor structured the plan so that the monthly obligations would be paid without revenue from such lease. <u>Id</u>. at 1033-1034. The U.S. Trustee

- 14 -

Plan B Motion to Dismiss

did not renew the motion to dismiss under section 1112 at the time of confirmation of the amended plan. Id. at 1034. The Ninth Circuit found that because the amended plan was lawfully proposed, the bankruptcy court correctly concluded that it met the requirements of 11 U.S.C. § 1129(a). Id. at 1035.

This post-petition change or alternative used by the debtor in In re Cook is not an option here. As discussed above, the Debtor admitted that ninety percent (90%) of the Debtor's current gross sales are from panels built for use in the cannabis industry; eliminating all such revenue would be inconceivable for the Debtor's ongoing operations.

In addition, the Debtor cited to In re Olson, 2018 Bankr. LEXIS 480 (B.A.P. 9th Cir. Feb. 5, 2018) for the proposition that:

> "[T]he BAP reversed dismissal of a Chapter 13 case of an individual who leased to a cannabis business. Like DPS, that debtor operated in a cannabis-adjacent space. *See Debtor Response*, ¶ 16."

On appeal, the BAP in In re Olson vacated and remanded the case, stating that the bankruptcy court needed to make more findings of fact and conclusions of law to support dismissal. Id. at *14-15. The bankruptcy court did not make adequate findings for the BAP to discern the standard under which it concluded that dismissal was mandatory. Id. at 1-2. The In re Olson case does not in any way support the Debtor's argument that a debtor that operates in a "cannabis-adjacent space" is entitled to benefit of Chapter 11.

## **CONCLUSION**

The Debtor is conducting operations in the normal course of its business that violate federal criminal law, namely the CSA. The Debtor's panels and other products are used in cannabis related activities and the Debtor is well aware of that (as its business depends on such customers). Also, the Debtor's business operations and revenue are derived from ongoing CSA violations, and such illegal proceeds cannot support the Debtor's chapter 11 plan of reorganization or liquidation. As admitted by

the Debtor, ninety percent (90%) of its gross sales are from panels built for use in the cannabis industry. Based upon the Debtor's own admission, the Court has no choice to find that the Debtor may not seek bankruptcy protection. The Court cannot be asked to enforce the protections of the Bankruptcy Code in aid of a debtor whose activities constitute a continuing federal crime.

Therefore, continuation of the case would likely cause any trustee appointed and/or the Court to become involved in administering the tainted assets as proceeds of an illegal business. The Court should dismiss the Debtor's Chapter 11 case for "cause" pursuant to §1112.

## RESERVATION OF RIGHTS

Plan B hereby expressly reserves the right to supplement this motion to dismiss, to file joinders to other motions to dismiss, or to seek dismissal of the Debtor's Chapter 11 case on any other basis not identified herein, including cause under section 1112(b)(4) of the Bankruptcy Code, such as (i) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, (ii) gross mismanagement of the estate, and (iii) inability to timely file and confirm a Chapter 11 plan.

WHEREFORE, Plan B respectfully requests that the Court enter an order: (i) granting the Motion; and (ii) granting such other and further relief as is just and proper.

DATED: January 22, 2024    SPILLANE TRIAL GROUP PLC
　　　　　　　　　　　　　　RIEMER & BRAUNSTEIN LLP

By: _____
　　Jay M. Spillane
Attorneys for Plan B Management, Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 468 N. Camden Drive, Second Floor, Beverly Hills, CA 90210-4507.

A true and correct copy of the foregoing document entitled (*specify*): **MOTION OF PLAN B MANAGEMENT, INC. TO DISMISS CHAPTER 11 CASE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**X  1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) January 22, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

William Winfield (wwinfield@calattys.com) (Debtor)
Brian Fittipaldi (brian.fittipaldi@usdoj.gov) (UST)
Ustpregion16.nd.ecf@usdoj.gov (UST)
Michele Assayag (massayag@swlaw.com) (Chase)
Michael Wintringer (mike@sglwlaw.com) (Pacific Western)
William C. Beall (will@beallandburkhardt.com) (Euclid Investments Funding II, LLC)
Lorenzo Nunez (csbk@gmfinancial.com) (GM Financial)

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: January 22, 2024                                    _____
                                                                                    Jessie Gietl

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                           **F 9013-3.1.PROOF.SERVICE**